**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| LEO JENKINS, ) | |
| ) | No. 6:13-cv-02021-DCN |
| Claimant, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security,* ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kevin McDonald's report and recommendation ("R&R") that the court affirm the Commissioner of Social Security's decision to deny claimant Leo Jenkins' ("Jenkins") application for disability insurance benefits ("DIB"). Jenkins has filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I. BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A. Procedural History

Jenkins filed an application for DIB on December 13, 2010, alleging disability as of June 1, 2009. The Social Security Administration ("the Agency") denied Jenkins's application both initially and on reconsideration. Jenkins requested a hearing before an administrative law judge ("ALJ") on September 13, 2011. On June 5, 2012, Jenkins and Victor G. Alberigi ("Alberigi"), an impartial vocational expert, appeared before the ALJ. The ALJ found that Jenkins did not suffer from a disability as defined in the Social

1

Security Act on June 14, 2012. The Appeals Council denied Jenkins' request for a review on May 20, 2013, making the ALJ's finding the final decision of the Commissioner.

On July 23, 2013, Jenkins filed the present action for judicial review. On September 10, 2014, the magistrate judge issued the instant R&R, recommending that the Commissioner's decision be affirmed. Jenkins objected to portions of the R&R on September 27, 2013. The Commissioner replied to those objections on October 17, 2014. This matter has been fully briefed and is now ripe for the court's review.

**B. Medical History**

The court dispenses with a lengthy recitation of Jenkins' medical history and notes only the facts relevant to the court's review. Jenkins was 56 years old on his alleged disability onset date and 59 years old on the date of the ALJ's decision. Jenkins has a degree in accounting. Tr. 24. Jenkins performed work in the past as a telemarketer, a car salesman, and an enumerator. Tr. 24-25.

Jenkins has had eczema his entire life. Tr. 30. Jenkins does not have any medical records prior to 2010. Tr. 31. On January 6, 2010, Dr. Lee Yarborough at Mt. Pleasant Dermatology treated Jenkins. Tr. 222-23. Jenkins reported that his skin condition was worsening, that he had had swollen glands for three to four months, and that he had received two steroid shots in the past. Tr. 222. Jenkins's wife reported that he had not been consistent with his treatment. Id. The doctor notice lichenified (thick and leathery) patches on Jenkins's skin and multiple papules on his face, arms, legs, and back. Id. The doctor diagnosed Jenkins with chronic contact or atopic dermatitis and prescribed him Bactim DS and Lidex cream. The doctor also took several biopsies that were reviewed in

January 7, 2010, and determined to be superficial spongiotic psoriasiform dermatitis. Tr. 224. After reviewing the results of the biopsies, the doctor recommended Jenkins stay on his current treatment plan. Jenkins visited Mt. Pleasant Dermatology again on January 20, 2010 and reported that both his skin condition and the lymphadenopathy were improving. Tr. 220.

On April 15, 2010, Jenkins went to a dermatology appointment at the Medical University of South Carolina ("MUSC"). Tr. 230. Dr. Emily Kmetz noted Jenkins's long history of eczematous dermatitis and that Jenkins reported that his condition had worsened over the past four-to-five months. Id. Jenkins also reported that he had not tried any treatment recently but that creams had not been effective in the past. Id. Jenkins requested pain medication and the doctor noted previous steroid injections. Id. The doctor assessed Jenkins as having an eczema flare and swollen lymph nodes. Id. The doctor also noted that Jenkins had not been compliant with topical medication in the past and explained to Jenkins that consistency with topical treatments was necessary to avoid systemic steroids. Id. The doctor also explained appropriate bathing and moisturizing techniques and directed Jenkins to return in two weeks for a follow-up appointment. Id.

On October 16, 2010, Jenkins was seen at the MUSC emergency department complaining of eczema and leg swelling. Tr. 226-28. Treatment records note his history with atopic dermatitis and successful treatment with steroids. Jenkins was treated with a Medrol Dose Pack, Lortab, and Nasonex and was discharged in stable condition. Tr. 228. Jenkins was also referred to the East Cooper Cares Clinic. Id. Jenkins returned to the clinic and emergency department at MUSC on November 4, 2010 complaining of

numbness in his fingers. Tr. 225. He reported that he was not currently suffering from symptoms but feared that he would have a stroke. Id. The medical provider noted his severe eczema. Id. Jenkins continued to see numerous dermatologists over the next year and a half. See Tr. 232-54. During each visit, he complained of his worsening skin condition, pain in his legs, and swollen lymph nodes. He was treated with steroids and topical medications.

### C. ALJ's Findings

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by his residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The claimant bears the burden of proof during the first

four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

At step one, the ALJ determined that Jenkins has not engaged in substantial gainful activity since June 1, 2009.  Tr. 12.  At step two, the ALJ determined that Jenkins has the following severe impairment:  superficial spongiotic psoriasiform dermatitis.  Id.  At step three, the ALJ determined that Jenkins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Agency's Listing of Impairments.  Tr. 12–13; see 20 C.F.R. Part 404, Subpt. P, App'x 1.  Before reaching the fourth step, the ALJ determined that Jenkins had the residual functional capacity ("RFC") to perform less than full range of sedentary work as defined by 20 C.F.R. § 404.1567(a).  Tr. 13.  Specifically, the ALJ found that Jenkins could lift up to twenty pounds occasionally; sit for six hours and stand/ walk for up to two hours in an eight-hour workday; occasionally use his lower extremities bilaterally for foot control; never climb ladders; occasionally climb ramps and stairs; and stoop, kneel, climb, and crawl.  Id.  The ALJ further determined that Jenkins should avoid concentrated exposure to extreme heat, wetness, and humidity and must avoid face-to-face contact with the general public.  Id.  The ALJ found, at step four, that Jenkins was able to perform his past relevant work as a telemarketer.  Tr. 14.  Thus, the ALJ determined that Jenkins has not been under a disability, as defined under the Social Security Act, from June 1, 2009 through the date of the ALJ's decision.  Tr. 15

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

## III.   DISCUSSION

Jenkins objects to the magistrate judge's R&R on two grounds, arguing that the magistrate judge erred in finding that: (1) the ALJ's failure to consider Jenkins's lymphadenopathy and edema at step two was harmless error; and (2) the ALJ's finding that Jenkins's dermatitis did not meet the requirements of Listing 8.05 was supported by substantial evidence. The court considers these objections in turn.

### A. Step Two Determination

At step two, the ALJ determined that Jenkins suffered from the following severe impairment: superficial spongiotic psoriasiform dermatitis. Tr. 12. Jenkins argues that the ALJ "fail[ed] to assess, evaluate and deal with Mr. Jenkins' severe impairments of lymphadenopathy and edema." Pl.'s Obj. 1.

A severe impairment is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). On the other hand, a non-severe impairment is defined as an impairment that "does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Further, a severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. . . ." 20 C.F.R. § 404.1508. Jenkins has the burden of proof at step two to demonstrate that he suffers from a severe impairment. Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987). "A claimant's own description of her physical or mental impairment is not enough to establish that there is, in fact, a physical or mental impairment." Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) (citing 20 C.F.R. § 404.1528(a)).

Jenkins alleges that the ALJ did not consider his lymphadenopathy in determining whether he suffered a severe impairment at step two and that he met his burden of proving a severe impairment from lymphadenopathy. Pl.'s Objections 2. The Commissioner argues that Jenkins did not allege that his swollen lymph nodes caused any functional limitation.

The ALJ's determination that Jenkins's lymphadenopathy was not a severe impairment is supported by substantial evidence. Jenkins' medical records indicate that he did complain of swollen lymph nodes during his January 6, 2010 appointment at Mt. Pleasant Dermatology and the April 15, 2010 appointment at MUSC. Tr. 222. However, there is no evidence in Jenkins' medical records that his swollen lymph nodes caused any functional limitations or that his pain was related to the swollen lymph nodes. Further, during his follow-up appointment on January 20, 2010, the doctor noted that Jenkins' lymphadenopathy had improved. Tr. 220. Jenkins' medical records also indicate that he historically was non-compliant with treatment plans. Tr. 222, 230. Additionally, during the hearing before the ALJ, Jenkins did not mention his lymphadenopathy, much less contend that it limited his functional capacity. Tr. 26-30.

Jenkins similarly claims that the ALJ failed to consider his edema in its step two analysis. Pl.'s Obj. 1. The court agrees that the ALJ could have engaged in a more extensive analysis of Jenkins' edema at step two in light of the record.[1] However, to the extent the ALJ erred in finding that Jenkins' edema was not a severe impairment, the court finds any such error to be harmless. "A harmless error is one where the ALJ would have reached the same result, notwithstanding the error." Kylander v. Colvin, No. 4:12-cv-3065, 2014 WL 869305, at *2 (D.S.C. Mar. 5, 2014) (citing Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994)). "A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three." Washington, 698 F. Supp. 2d at 579. Courts in this district have determined that

---

[1] Jenkins did complain of pain in his ankles and feet during the ALJ hearing. Further, Jenkins' medical records reference pain and swelling in Jenkins' lower extremities. See Tr. 230. However, the ALJ did not explicitly address edema in the step two analysis. The ALJ did, however, include the edema symptoms in the RFC analysis.

8

an ALJ's failure to consider an impairment at step two is harmless when the ALJ considers the impairment in subsequent steps of its analysis. See, e.g., Martinez v. Astrue, No. 1:11-cv-850, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012) adopted by, No. 1:11-cv-850, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("The undersigned agrees with other courts that find no reversible error where the ALJ does not find an impairment severe at step two provided that he considers that impairment in subsequent steps."); Washington, 698 F. Supp. 2d at 580 (same); Singleton v. Astrue, No. 9:08–1982–CMC, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009) (same).

The ALJ considered both Jenkins's edema and lymphadenopathy in determining Jenkins' RFC at step three. Specifically, the ALJ referenced Jenkins' pain in his ankles and determined that "[t]here was evidence of pitting edema in the lower extremities bilaterally, but no evidence of infection." Tr. 13-14. In determining Jenkins' RFC, the ALJ found that Jenkins was able to stand and walk up to two hours a day and could only occasionally use his lower extremities. Tr. 13. The ALJ further determined that Jenkins should never climb ladders, ropes or scaffolds. Id. Thus, the ALJ did account for limitations that may have been caused by Jenkins's edema.

Harmless error also applies to any potential error in the ALJ's finding that Jenkins' lymphadenopathy was not a severe impairment. At step three, the ALJ found that "[t]here was exocytosis of lymphocytes with spongnosis and superficial perivascular inflammatory infiltrate of the lymphocytes. However there was no typical lymphocyte identified." Tr. 14. The ALJ further noted Jenkins' improvement after given the oral and topical treatments. Id. Based on the record, it is clear that the ALJ considered Jenkins's edema and lymphadenopathy at step three and accounted for limitations that may have

9

been caused by those impairments.  Therefore, the ALJ did not commit reversible error by failing to find that the edema and lymphadenopathy were not severe impairments. See Mickles, 29 F.3d at 921 (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); Bryant v. Colvin, 571 F. App'x 186, 188 (4th Cir. 2014) (finding no error when "the record reveal[ed] that although the ALJ did not specifically find that Bryant suffered from 'major depressive disorder,' the ALJ discussed Bryant's history of depression under steps two and three and when determining her RFC").

### B. Listing 8.05

Jenkins next contests the magistrate judge's finding that although Jenkins did suffer from extensive skin lesions as defined under Listing 8.05, he did not suffer from lesions that persisted despite continued treatment for at least three months as required under Listing 8.05.  The magistrate judge affirmed the ALJ's decision, finding that although the record provides evidence of extensive skin lesions, "[g]iven the evidence cited in the ALJ's decision regarding the infrequency of the plaintiff's medical treatment, his noncompliance with topical skin treatment, and the reported improvement in the plaintiff's condition when he did follow treatment," the ALJ's decision was supported by substantial evidence.  R&R 14.  Jenkins argues that the magistrate improperly pointed to a different portion of the ALJ's decision that did not relate to the step three analysis in affirming the ALJ's decision.

Contrary to Jenkins' contentions, the ALJ did in fact find that although "[t]he record reveals that [Jenkins] has a history of eczema since childhood, [] there is no

evidence of extensive skin lesions that have <u>persisted for at least 3 months despite continuing treatment</u>." Tr. 13 (emphasis added). In that same section, the ALJ determined that the medical evidence documented lichenified areas on Jenkins's skin but not specifically skin lesions. However, in the ALJ's step four analysis immediately following the aforementioned section, the ALJ noted that "the record reveals that the claimant has not been compliant with his medication." Tr. 14. Thus, the ALJ did not determine that Jenkins failed to meet Listing 8.05 solely on the lack of skin lesions.

Further, at least two doctors noted that Jenkins was non-compliant with past treatment. The evidence shows that Jenkins' condition improved when given steroid treatments, at first for six weeks at a time and then for two weeks. Tr. 27-28. Dr. Yarborough noted improvements after topical treatment during Jenkins' follow-up appointment after less than two weeks of treatment. Moreover, the record indicates that Jenkins sought treatment for his atopic dermatitis on an irregular and infrequent basis, allowing six months to pass between doctor visits on one occasion. Although Jenkins claims that his medical history shows that his skin conditions persisted for at least three months despite continuing treatment, the record demonstrates that Jenkins' condition did improve when treated and that he was not compliant with the treatments provided.

Thus, the ALJ's decision that Jenkins did not have an impairment or combination of impairments that meets Listing 8.05 is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set for above, the court **ADOPTS** the magistrate judge's R&R and **AFFIRMS** the Commissioner's decision.

  **AND IT IS SO ORDERED**.

                **DAVID C. NORTON**
                **UNITED STATES DISTRICT JUDGE**

**March 24, 2015**
**Charleston, South Carolina**